[No. 13990-5-III.   Division Three.   August 15, 1996.]

GARY A. DEGROOT, ET AL., *Appellants*, v. BERKLEY
CONSTRUCTION, INC., ET AL., *Respondents*.

126

*LeRoy P. Shuster* and *Shuster Law Firm;* and *Bruce W. Gore, David K. DeWolf,* and *Casey, Gore & Grewe,* for appellants.

*Michael J. McMahon* and *Etter & McMahon,* for respondents.

SCHULTHEIS, J. — Gary Degroot was injured while working on a construction site and sued general contractors, Berkley Construction, Inc., and Sabey Corporation (Berkley/Sabey).[1] The jury found that Berkley/Sabey were not at fault. Mr. Degroot appeals, contending the court erred in admitting the contract between Sabey and subcontractor Eller Corporation, Mr. Degroot's employer. We affirm.

Mr. Degroot was a backhoe operator, one of a team

---

[1]Mr. Degroot's original complaint included as defendants Eller Corporation, Commercial Electrical Contractors, Inc., and his ex-wife, Roberta Degroot. After he received benefits from the Department of Labor and Industries pursuant to RCW Title 51 (the workers' compensation act), his suit against Eller was dismissed. His suit against Commercial Electrical was dismissed on summary judgment and Ms. Degroot confessed judgment, declining any interest in his claims.

working around-the-clock to expand the Northtown shopping mall in Spokane. Late one night in June 1989, Mr. Degroot fell and injured his back as he exited the cab of his backhoe. He sued Berkley/Sabey for negligence and violation of the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17.

Before trial, Mr. Degroot moved to exclude a subcontract "health and safety" provision. This section provides that the subcontractor (Eller) must strictly comply with all safety regulations and must protect its own employees from risk of harm or death. It also requires indemnification by the subcontractor for any liability the general contractor suffers as a result of the subcontractor's violation of safety regulations. At the hearing on the motion in limine, the parties agreed that a general contractor has a nondelegable duty to furnish a reasonably safe working environment for its workers. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990). Mr. Degroot asserted the safety provision gave the impression this duty was delegated to Eller. Berkley/Sabey argued the provision merely represented one of the steps used by the contractors to exercise reasonable care. The court ordered admission of the safety provision.

At trial, the court included the following limiting instruction proposed by Mr. Degroot:

> Exhibit 103 [the safety provision] was received in evidence for a limited purpose relating to whether [Berkley/Sabey] exercised due care in carrying out its duties under WISHA administrative regulations. It was not received in evidence for the purpose of showing that those WISHA duties had been delegated to Eller Corporation.

The parties agreed to another instruction informing the jury that a general contractor must exercise ordinary care to provide for compliance with safety regulations on the job site. By special verdict, the jury found that the general contractors were not negligent. The court entered judgment on the verdict in April 1994 and this appeal followed.

Mr. Degroot contends the court erred in admitting into evidence the safety provision from the subcontract. The pertinent sections of this provision are as follows:

> 30. HEALTH AND SAFETY. Subcontractor shall, at its own cost and expense, protect its own employees, employees of Contractor, and all other persons from risk of death, injury or bodily harm arising out of or in any way connected with the work to be performed under this Subcontract.
>
> Subcontractor shall strictly comply with all safety orders, rules, regulations or requirements of all federal, state and local government agencies, exercising safety jurisdiction over said work including, but not limited to, federal OSHA and state occupational safety and health regulations.

Mr. Degroot argues first, that the evidence was not relevant to the issue of Berkley/Sabey's negligence, and second, that even if relevant, the evidence should have been excluded as misleading.

■■ In order to be admissible, evidence must be relevant, meaning it must tend to make the existence of any fact of consequence to the action more or less probable. ER 401, 402; *State v. Luvene*, 127 Wn.2d 690, 706, 903 P.2d 960 (1995); *Wallace Real Estate Inv., Inc. v. Groves*, 72 Wn. App. 759, 771, 868 P.2d 149, *aff'd*, 124 Wn.2d 881, 881 P.2d 1010 (1994). Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the likelihood it will mislead the jury. *Luvene*, 127 Wn.2d at 706; ER 403. The trial court's decision to admit or exclude evidence and the court's balancing of probative value against prejudicial effect are entitled to "a great deal of deference, using a 'manifest abuse of discretion' standard of review." *Luvene*, 127 Wn.2d at 707; *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994).

■■ Mr. Degroot alleged that Berkley/Sabey failed to provide sufficient lighting on the night of his accident, a

violation of WAC 296-155-165[2] (a regulation authorized by WISHA, RCW 49.17.040, .050), and that Berkley/Sabey had neither an accident prevention program nor safety supervision adequate to constitute due care. We agree with the trial court that the subcontract's safety provision was relevant to Berkley/Sabey's defense, showing one of many steps the general contractors had taken to use reasonable care and to comply with the WISHA safety regulations.

The general contractor has the duty, as a matter of policy, to ensure compliance with WISHA regulations.[3] *Stute*, 114 Wn.2d at 463. To that end, it is the general contractor's responsibility "to furnish safety equipment or to contractually require subcontractors to furnish adequate safety equipment relevant to their responsibilities." *Stute*, 114 Wn.2d at 464. The subcontract safety provision at issue here contains boilerplate language that appears designed to meet the duty of care outlined in *Stute*. Accordingly, the evidence is at least relevant to whether Berkley/Sabey fulfilled their WISHA responsibility for the safety of all employees on the work site.

Mr. Degroot contends the facts here are indistinguishable from those in *Ward v. Ceco Corp.*, 40 Wn. App. 619, 699 P.2d 814, *review denied*, 104 Wn.2d 1004 (1985), in which the court excluded a contract that delegated to the

[2]Pertinent sections of WAC 296-155-165 provide:

"(2) Whenever general lighting of an entire area is not provided, illumination sufficient to provide visibility of potentially hazardous objects and emergency control equipment shall be supplied . . .

"(3) Diffusion and distribution of artificial and natural light. Artificial light sources shall be installed with regard to mounting height, spacing and reflectors or other suitable accessories so as to secure a reasonably uniform distribution of illumination and to avoid glare and sharply defined shadows which could temporarily reduce a person's ability to see clearly."

[3]Generally, an employer of an independent contractor is not liable for injuries to the employees of the independent contractor. *Hennig v. Crosby Group, Inc.*, 116 Wn.2d 131, 133, 802 P.2d 790 (1991). An exception exists if the employer of the independent contractor retains control over some aspect of the work. *Hennig*, 116 Wn.2d at 134. Another exception is provided by RCW 49.17.060(2), which imposes a specific duty on the general contractor/employer to comply with the WISHA safety regulations. *Stute*, 114 Wn.2d at 457. The parties here address only the statutory duty to comply with WISHA.

general contractor the responsibility to provide certain safety features. The subcontractor in *Ward* failed to erect guardrails around a high wooden platform it had built and an employee of the general contractor fell, sustaining injuries. Finding that RCW 49.17.060(2) imposed a duty on all employers at a work site to provide a safe workplace for all employees, the court concluded the subcontractor's duty was nondelegable and therefore refused to admit contract evidence that the duty had been delegated. *Ward*, 40 Wn. App. at 625, 629-30.

What distinguishes *Ward* from the case before us is the fact that the *Ward* subcontractor sought admission of the contract to prove the duty to erect guardrails had been delegated to the general contractor. *Ward* recognizes that subcontract provisions are admissible for other purposes, including to establish that one of the employers assumed a particular duty. *See Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 332-33, 582 P.2d 500 (1978) (the contract was admitted to show that the general contractor had assumed a duty, and the court specifically stated that the duty imposed on all employers by former RCW 49.16.030 was nondelegable), *cited in Ward*, 40 Wn. App. at 628. Here, the parties did not dispute the fact that Berkley/Sabey's duty was nondelegable, and the court, as in *Kelley*, instructed the jury that the evidence did not show the duty had been delegated to the subcontractor.

We next examine whether the relevance of this evidence was outweighed by its potential to mislead the jury. *Luvene*, 127 Wn.2d at 706. As noted earlier, the trial court's discretion is afforded "a great deal of deference" in its balancing of probative value against prejudicial effect. *Id.* at 707. We find no evidence the court abused its discretion here.

■ The parties agreed at trial that the general contractors' duty to comply with WISHA safety regulations was nondelegable, citing *Stute*, 114 Wn.2d at 464. Berkley/Sabey never argued that their duty to provide a safe work environment for all employees, including the subcontrac-

tor's employees, had been delegated to Eller in the safety provision. On the contrary, they submitted the provision as direct evidence of their attempt to exercise reasonable care to enforce safety regulations on the work site. Other testimony established that the general contractors employed a full-time safety supervisor, held weekly safety meetings and maintained an accident response program. The limiting instruction supplied by Mr. Degroot specifically directed the jury to consider the safety provision only as it related to Berkley/Sabey's exercise of due care. The jury was also instructed that the provision was not admitted to show that Berkley/Sabey's WISHA duties had been delegated to Eller, and another instruction informed the jury that "[a] general contractor must exercise ordinary care to provide for compliance with safety regulations on the job site." We assume juries follow all the instructions given. *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992).

Finally, it should be noted that the contract provision was entered into evidence almost without comment. Mr. Degroot's counsel renewed his objection, the Berkley/Sabey project manager read the relevant portions into the record, and the jury heard no more about the provision until the jury instructions were given. During closing arguments, Berkley/Sabey reiterated that a general contractor's duty is to use reasonable care to ensure the safety of all employees. No exception to this rule was mentioned and no allusion was made to the subcontract. In summary, the record does not show that the admission of the safety provision had any likelihood to confuse or mislead the jury. Accordingly, the court's balancing of probative value and prejudicial effect was not "manifestly unreasonable" or based on untenable reasons. *Goodwin v. Bacon*, 127 Wn.2d 50, 54, 896 P.2d 673 (1995).

Affirmed.

MUNSON, J., concurs.

SWEENEY, C.J. (concurring) — A general contractor's

duty to provide a safe workplace is nondelegable. *Stute v. P.B.M.C., Inc.,* 114 Wn.2d 454, 463-64, 788 P.2d 545 (1990) (primary employer has a duty to provide for safety); *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 331-32, 582 P.2d 500 (1978) (general contractor has ultimate responsibility for job safety); *Ward v. Ceco Corp.,* 40 Wn. App. 619, 628-29, 699 P.2d 814 (duty is nondelegable), *review denied,* 104 Wn.2d 1004 (1985). The subcontract provision admitted into evidence here provides:

> Subcontractor shall, at its own cost and expense, protect its own employees, employees of Contractor, and all other persons from risk of death, injury or bodily harm arising out of or in any way connected with the work to be performed under this Subcontract.
>
> Subcontractor shall strictly comply with all safety orders, rules, regulations or requirements of all federal, state and local government agencies, exercising safety jurisdiction over said work including, but not limited to, federal OSHA and state occupational safety and health regulations.

I write separately because I believe the effect of giving this agreement to the jury was to suggest that the general contractor could discharge its nondelegable duty by contractually shifting that obligation to the subcontractor. It cannot.

At issue in this case was what steps the general contractor took to protect the subcontractor's employees. Evidence showing that the general contractor required the subcontractor to hold regular safety meetings, erect handrails or guardrails, and furnish protective clothing or respiratory devices, or that it would periodically review the subcontractor's records or work site is relevant. For me this subcontract provision merely shows that the general contractor tried to shift its legal obligation to the subcontractor.

The provision was not relevant and therefore should not have been admitted. Its admission did not tend to "make the existence of any fact that is of consequence to the de-

termination of the action more probable or less probable than it would be without the evidence." ER 401. And admission of the provision could have misled and confused the jury. ER 402, 403.

Reversal is required, however, only if there is a substantial likelihood that the error affected the verdict. *Henderson v. Tyrell*, 80 Wn. App. 592, 620, 910 P.2d 522 (1996). And the admission did not affect the verdict here. By special verdict form, the jury found neither the general contractor nor the subcontractor negligent. Therefore, even if the jury was led to believe that the subcontract shifted the general contractor's duty, it would not have changed the result. The admission of the subcontract provision was therefore harmless.