# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

AIMEI W. CRETTOL and MARTIN )
CRETTOL, individually and the marital ) No. 68943-6-I
community comprised thereof, )
  )
  ) DIVISION ONE
Appellants, )
  )
v. )
  )
FILBERTO GONZALEZ-REYES and )
JANE DOE GONZALEZ-REYES, )
individually and the marital community )
comprised thereof, ) UNPUBLISHED OPINION
  )
Respondents. ) FILED: October 28, 2013

SPEARMAN, A.C.J. — Aimei Crettol sued Filberto Gonzalez-Reyes after the

two were involved in a car accident.[1] Crettol seeks reversal of the jury's verdict

entered in favor of Gonzalez-Reyes. She assigns error to the trial court's rulings

(1) giving an emergency instruction to the jury, (2) permitting Gonzalez-Reyes to

testify that he had leukemia, and (3) admitting evidence that Crettol failed to

improve after the accident because of her "somatic focus" and "pain behaviors."

We agree with Crettol that the trial court committed prejudicial error in giving the

emergency instruction. We also conclude the trial court erred in admitting

---

[1] The spouses of Crettol and Gonzalez-Reyes are also named parties, but we will refer to Crettol and Gonzalez-Reyes as if they were the sole parties in this appeal.

evidence of Crettol's somatic focus but did not err in permitting Gonzalez-Reyes to testify that he had leukemia. We reverse and remand for a new trial.

## FACTS

On February 25, 2008, Michael Steiner, Aimei Crettol, and Filberto Gonzalez-Reyes were traveling in the left lane of the two westbound lanes of 212th Street in Kent, Washington. Steiner was the lead vehicle, with Crettol behind him, an unidentified car behind Crettol, and Gonzalez-Reyes behind the unidentified car.

Steiner slowed down when he saw a truck in front of him drive over a piece of broken concrete from the roadway meridian. He ran over the piece of concrete and it became stuck under his car, after which he travelled 30 to 40 feet before coming to a stop. He then heard the sounds of an accident behind him. Steiner got out of his car and walked to the accident scene. There were multiple cars behind Crettol's van and Gonzalez-Reyes was the driver of the first car behind it. Steiner observed that Gonzalez-Reyes had run into the back of Crettol's van.

Crettol was injured in the accident and she filed suit against Gonzalez-Reyes. Crettol's treating physician, Marvin Brooke, M.D., and Gonzalez-Reyes's medical expert, Allen Jackson, M.D., testified that Crettol suffered damages that were caused by the accident, though they disagreed regarding the extent of her damages.

2

No. 68943-6-I/3

The jury found that Gonzalez-Reyes was not negligent, and the trial court entered judgment on the verdict. Crettol appeals, assigning error to three of the trial court's rulings.[2]

## DISCUSSION

### Emergency Instruction

Over Crettol's objection,[3] the trial court gave an emergency instruction (Instruction No. 15) that stated,

> A person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though it is not the wisest choice.

Clerk's Papers (CP) at 90.

Crettol claims the trial court erred in giving this instruction given the evidence in this case.[4] A trial court's decision to give an emergency instruction is

---

[2] Crettol also claims the trial court erred in denying her motion for a new trial. She contends all of the evidence showed that Gonzalez-Reyes was at fault. Granting a motion for a new trial is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, we can say as a matter of law that there is no substantial evidence or reasonable inferences to sustain the verdict for the nonmoving party. Kohfeld v. United Pac. Ins. Co., 85 Wn. App. 34, 41, 931 P.2d 911 (1997). We cannot review this claim. Only portions of the verbatim report of trial proceedings are in the record, and it is impossible to determine whether all the evidence showed Gonzalez-Reyes was at fault. The appellant has the burden of complying with the rules and presenting a record adequate for review on appeal. In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). Failure to provide an adequate record precludes appellate review. Olmstead v. Mulder, 72 Wn. App. 169, 182-83, 863 P.2d 1355 (1993).

[3] Crettol also objected to Instruction No. 12, but that instruction does not state the emergency rule.

[4] Crettol does not contend that Instruction No. 15, which is copied from 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 12.02 (WPI) 12.02 (6th ed. 2012) incorrectly states the law.

3

reviewed for abuse of discretion. <u>Kappelman v. Lutz</u>, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). In giving an emergency instruction, the court must decide whether the record contains the kind of facts to which the emergency doctrine applies. <u>Id.</u>

The emergency rule "is applicable only after a person has been placed in a position of peril and there is a choice between courses of action after the peril has arisen." <u>Zook v. Baier</u>, 9 Wn. App. 708, 713, 514 P.2d 923 (1973) (citations omitted). "The doctrine excuses an unfortunate human choice of action that would be subject to criticism as negligent were it not that the party was suddenly faced with a situation which gave him no time to reflect upon which choice was the best." <u>Id.</u> at 714. An emergency instruction is not appropriate when there are no alternative courses of action available, when there is only time for a single instinctive reaction. <u>Id.</u>; <u>see also</u> <u>Brown v. Spokane County Fire Protection Dist. No. 1</u>, 100 Wn.2d 188, 668 P.2d 571 (1983) (emergency instruction inapplicable where evidence showed driver decided to swerve and deliver glancing blow rather than hitting the fire truck squarely; there were no alternative courses of action other than to strike the fire truck). An emergency instruction is also not appropriate if the emergency is brought about by the negligence of the party seeking the instruction. <u>Zook</u>, 9 Wn. App. at 714. An emergency instruction is required where there is conflicting evidence on the applicability of the doctrine. <u>Bell v. Wheeler</u>, 14 Wn. App. 4, 6, 538 P.2d 857 (1975).

Gonzalez-Reyes contends the trial court correctly gave the emergency instruction because the evidence demonstrated that he could have swerved to the right, like the red car in front of him, but instead chose to try to stop within the lane. However, he points to no evidence in the record to show that at the time of the accident he had such a choice. At trial, Gonzalez-Reyes testified that there was a red car in front of him and behind Crettol that moved into the right lane. He testified that after the red car moved to the right, he saw Crettol's car, which was stopped, and he tried to stop but could not stop quickly enough so he ran into her. He did not testify that there were alternative courses of action available to him or that he made a split-second decision to take one course instead of another. Nor does Gonzalez-Reyes point to any other evidence to support such a claim. The emergency instruction was improperly given on these facts.

A jury instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party. Cox v. Spangler, 141 Wn.2d 431, 442, 5 P.3d 1265 (2000). An error is prejudicial if it affects the outcome of the trial. State v. Wanrow, 88 Wn.2d 221, 237, 559 P.2d 548 (1977). Given the narrow facts on which liability turned, we conclude the emergency instruction was prejudicial. We reverse and remand on this basis but will also address the evidentiary rulings for the trial court's benefit on remand.

### Gonzalez-Reyes's Testimony

Gonzalez-Reyes testified at trial. During his direction examination, he testified that he had leukemia, as follows:

BY MS. CANIFAX:

Q. Filberto, it's obvious you walk with a limp now. Can you tell us what's going on with your health right now?
MR. MACDONALD: Objection, relevance.
THE COURT: Overruled.
A. It was about the treatment I had for leukemia.
BY MS. CANIFAX:
Q. For leukemia?
A. Yes.
Q. All right. And at the time of this accident in 2008, were you able to drive?
A. Yes.
Q. Okay. So the — your limping and your leukemia didn't come from this accident?
A. No.

Verbatim Report of Proceedings (VRP) (4/23/12) at 9-10.

Crettol contends the trial court abused its discretion in permitting Gonzalez-Reyes to testify about his leukemia because such testimony was irrelevant and unfairly prejudicial. The trial court's decision to admit or exclude evidence and its balancing of probative value against prejudicial effect are reviewed for manifest abuse of discretion. Degroot v. Berkley Const., Inc., 83 Wn. App. 125, 128, 920 P.2d 619 (1996).

Evidence is admissible if it is relevant. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

6

without the evidence." ER 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. Evidence may be unfairly prejudicial if it is "dragged in for the sake of its prejudicial effect or is likely to trigger an emotional response rather than a rational decision among the jurors." Hayes v. Wieber Enterprises, Inc., 105 Wn. App. 611, 618, 20 P.3d 496 (2001) (internal quotation marks and citation omitted). "The burden of showing prejudice is on the party seeking to exclude the evidence." Id. (quoting Carson v. Fine, 123 Wn.2d 206, 225, 8667 P.2d 610 (1994)).

We conclude the trial court did not abuse its discretion in permitting the testimony. The issue at trial was whether Gonzalez-Reyes was negligent. As Gonzalez-Reyes contends, the explanation of his limp was relevant because it could have disabused the jury of speculation as to whether he was limping at the time of the accident and should not have been driving. Evidence that a person should not be driving due to a health condition tends to show that he was driving negligently. Moreover, to the extent the brief reference to Gonzalez-Reyes's leukemia was irrelevant, we are not persuaded that it was unfairly prejudicial.

Evidence of Crettol's "Somatic Focus"

Before offering the testimony of her treating physician, Brooke, and her treatment records from Capen Industrial Rehabilitation Services, Crettol filed a motion to exclude (1) the occupational therapists' references to Crettol's "somatic

focus" and "pain behaviors" in the Capen records[5] and (2) the portions of Brooke's perpetuation deposition when he is asked by Gonzalez-Reyes's counsel about somatic focus and pain behaviors.[6] The trial court denied the motion. The objected-to portions of the Capen records and Brooke's perpetuation deposition were published to the jury.

Crettol contends the Capen therapists' statements regarding somatic focus and pain behaviors were inadmissible because they were hearsay, irrelevant, prejudicial, lacked foundation, and violated <u>Mothershead v. Adams</u>, 32 Wn. App. 325, 647 P.2d 525 (1982). Gonzalez-Reyes contends the Capen records were medical records admissible as an exception to the hearsay rule

---

[5] This evidence appears in a Capen "Work Conditioning Physical Therapy Discharge" record and a "Work Conditioning Discharge Report Occupational Therapy" record, both dated April 30, 2009. The former states that Crettol completed 22 visits and "made good progress overall, however has been limited by her own somatic focus and overall fear to progress." CP at 546. The latter states, in the "Assessment" section, "The client demonstrates significant somatic focus and self limiting pain behaviors. These barriers limited the client's treatment gains. . . . It is likely the client could make further treatment gains, however, outcomes may be guarded due to client's significant somatic focus and perception of disability." CP at 548.

[6] Brooke was asked by Gonzalez-Reyes's counsel whether he was familiar with the phrase "somatic focus." He stated, "[L]iterally, it means focusing on the somatic, which is an adjective meaning the body. So it means focusing on the body." Counsel testified that he was familiar with the term "pain behaviors," describing it as "behaviors that are in some way connected with pain but aren't necessarily connected with any other finding." When counsel asked whether it would be helpful for him, as a treating physician, to know whether an ancillary provider believed there was somatic focus or pain behaviors in his patient, he stated that it would because he could correlate such belief with his own impression and "look for other supporting or conflicting information and other factors that may or may not explain what was observed." Counsel asked whether pain behaviors and somatization were signs of poor prognosis. Brooke answered that in general, they were. Counsel then asked, "Meaning that it's not likely that any treatment is going to help the person recover because the focus isn't necessarily physiological in terms of muscle damage, correct?" He responded that "used as simple terms like that out of context, they aren't helpful," but that in context and with other information they would be important. Finally, when counsel asked whether he believed Crettol had somatization risks or pain behaviors, he stated, "Oh, no. I felt that there was obvious anxiety and other issues that needed to be evaluated and treated in conjunction with her other treatment." CP at 231-35.

8

under RCW 5.45.020. Again, the admission or exclusion of evidence is reviewed for abuse of discretion. Degroot, 83 Wn. App. at 128.

Hearsay is generally inadmissible unless there is an applicable exception. ER 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Under the "business records" exception to the hearsay rule,

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020. Generally, however, an expert opinion cannot be admitted as part of a business record. State v. Wicker, 66 Wn. App. 409, 412-13, 832 P.2d 127 (1992). "[T]he business records exception does not, nor should it, allow for the admission of expert opinions for which the opportunity to cross-examine would be of value—like psychiatric diagnoses." In re Welfare of J.M., 130 Wn. App. 912, 924, 125 P.3d 245 (2005).

Gonzalez-Reyes argues the therapists' statements were not admitted for diagnostic purposes but instead as evidence of the therapists' observations of Crettol. He contends that this evidence supported his arguments that Crettol's injuries could have been resolved but for her self-limiting participation in

occupational therapy.[7] Gonzalez-Reyes is correct that, had the evidence been limited to the therapists' observations, it would have been admissible as a "record of an act, condition or event" under RCW 5.45.020, but that is not what occurred below. Instead, the manner in which the evidence was presented to the jury suggested that somatic focus and pain behaviors were diagnosable conditions[8] and that the Capen therapists had in fact made that diagnosis as to Crettol.[9] And further, the Capen records suggested that the diagnosed conditions prevented her from progressing in occupational therapy. As such, the evidence was not admissible as a business record.

The statements in the Capen records also did not meet ER 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Here, there was no evidence as to the Capen therapists' expertise to show that they were qualified to offer an opinion about somatic focus or pain behaviors, or evidence as to the therapists' reasoning in coming to a determination about somatic focus

---

[7] The trial court ruled that the Capen therapists' observations were not an opinion or diagnosis but instead related to a behavior, description, or "term." VRP (4/25/12) at 5-7.

[8] During Brooke's perpetuation deposition, Gonzalez-Reyes's counsel asked him if he had "ever diagnosed anyone with pain behavior." CP at 233.

[9] The Capen records stated that Crettol demonstrated "significant somatic focus and self limiting pain behaviors" and that her progress was limited by her "somatic focus."

or pain behaviors. The trial court abused its discretion in admitting the evidence. Accordingly, the evidence regarding Crettol's somatic focus in the Capen records and Brooke's testimony was inadmissible.

Reversed and remanded.

_Spear, A.C.J._

WE CONCUR:

_Appelwick, J_

_Becker, J._