# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | |
| | ) | No. 72912-8-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ZACKARY ALLEN HOEG, | ) | |
| Appellant. | ) ) | FILED: February 29, 2016 |

DWYER, J. — Following a jury trial, Zackary Hoeg was convicted of attempted residential burglary. On appeal, Hoeg contends both that prosecutorial misconduct deprived him of his constitutional right to a fair trial and that his attorney provided constitutionally ineffective assistance by neither objecting to the alleged misconduct nor requesting a curative jury instruction. Finding no error, we affirm.

I

Kirsten Zenie's deceased parents owned a home located in a residential neighborhood in Marysville. The home sits on a five acre parcel located back from the roadway and is surrounded by woods. As executor of her father's estate, Zenie maintained the home, paying the utility bills and taxes. Although the house had been unoccupied since 2012, Zenie visited the property at least once per month, and often as frequently as three times per week, to tend to various chores.

On March 7, 2014, Zenie received a call from a security company informing her that the alarm at the property had been activated. Upon confirming that no one should have been at the house, the security company advised Zenie to call the police. Shortly thereafter, Zenie received a call from Marysville Police Officer Jeremy Wood. Officer Wood likewise confirmed with Zenie that no one had permission to be at the home.

Within minutes, Officer Wood arrived at the home and positioned himself in a location to observe the property. Officer Wood soon noticed a man, later identified as Hoeg, leaving the back portion of the property heading eastward. After spotting Officer Wood, Hoeg changed course and briskly started walking southbound away from Officer Wood's patrol vehicle. After backup officers arrived, Officer Wood approached Hoeg, handcuffed him, and placed him in the back of his patrol car. Officer Wood explained to Hoeg that he was being detained in connection with an investigation into a residential burglary.

Meanwhile, other officers approached the main door of the home, observed the scene, and reported to Officer Wood that a visible shoe print was present and that the main door had been kicked in. Upon receiving this information, Officer Wood read Hoeg his Miranda[1] rights and asked Hoeg if he wished to talk about the incident. Hoeg was cooperative with the investigation and informed Officer Wood that he had kicked in the door, that the alarm sounded, and that he then took off. Hoeg stated that he was looking for directions to the main road, clean clothes, and blankets.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

Based on the foregoing events, the State charged Hoeg with attempted residential burglary.

At trial, Hoeg testified in his own defense. Hoeg testified that he was homeless and that on March 7 he had been walking through a wooded area in Marysville when he came upon a house. He recalled that he walked around the house for approximately 20 or 30 minutes, looked in the windows, knocked on the door, and rang the doorbell in order to discern whether anyone was living there. Hoeg stated that he believed that no one occupied the house at the time[2] and that he attempted to gain access to the home because he was wearing dirty clothes and wanted to "find something warmer to wear and possibly a blanket to use at nighttime." Hoeg testified that he thought the items in the home "were left behind, discarded, and no one was going to come back for them."

Additionally, Hoeg stated that he kicked the door open because he thought the house was vacant and this was his only means of entry. He testified that, in the event he was wrong about the house being unoccupied, he did not

---

[2] Q   Do you remember what you saw through the windows?
A   I saw cob webs, stuff like on the side, like, laying down. Like everything everywhere. Everything looks like a mess, and just looks like it hasn't been up kept or anything.
Q   How about the grass?
A   The grass in the back was really, like, kind of swampy and mushy. Like you walk through and gets really dirty easily.
Q   Did it look like it had been mowed?
A   No.
Q   Did you think anyone was living in the house?
A   No, I did not.
Q   Why not?
A   Because when I was walking around, when I got to the front of the residence, there was a bunch of dog houses behind a fence and they all looked like ran down and, like, broken and, like, one that hasn't been touched for a while. And the inside of the house looked like it hasn't had anyone going there frequently or staying in it.

want to be "held responsible for taking something that was worth value or anything."[3] When the alarm sounded, he ran off into the woods. As he saw Officer Wood approaching, Hoeg went in the other direction instead of talking to him because he was afraid.

The jury convicted Hoeg of attempted residential burglary, and the court imposed a sentence of 60 days confinement. Hoeg timely appeals.

II

Hoeg first contends that reversal of his conviction is required because the prosecutor engaged in misconduct by improperly appealing to the jurors' emotions. This is so, he asserts, because the prosecutor's repeated references to "universal truths" and "accountability" invited the jurors to decide the case on an emotional, not evidentiary, basis. We disagree.

"The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012) (citing Estelle v. Williams, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); State v. Finch, 137 Wn.2d 792, 843, 975 P.2d 967 (1999)). "Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." Glasmann, 175 Wn.2d at 703-04 (citing State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984)).

---

[3] Hoeg further stated,
Just in case for some reason whatsoever that I was wrong about the house. And if anyone did live in it, I didn't want to be, like, held responsible for taking something that was worth value or anything. I was just going in to look for clothes. I'm not a thief. I was hoping to find something to stay warm.

"In order to establish prosecutorial misconduct, a defendant must show 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)). When analyzing prejudice, we consider the comments in the context of the entire argument, not in isolation. State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). "The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?" Slattery v. City of Seattle, 169 Wash. 144, 148, 13 P.2d 464 (1932).

"Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review." State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Where the defendant objects at trial, the defendant must demonstrate that "the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760 (citing State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009)). However, the failure to object to an improper remark at trial constitutes a waiver of the claim of error, "and appellate review is precluded, unless the remark is deemed so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Stenson, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997) (citing State v. Gentry, 125 Wn.2d 570, 596,

888 P.2d 1105 (1995); State v. Fiallo–Lopez, 78 Wn. App. 717, 726, 899 P.2d 1294 (1995)). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn. 2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

Hoeg did not object to the prosecutor's statements at trial, did not request a mistrial, and did not request a curative instruction to the jury. Thus, Hoeg bears the burden of proving (1) that the prosecutor's remarks were improper, (2) that these remarks were so flagrant and ill-intentioned that they resulted in enduring prejudice, and (3) that the prejudice could not have been alleviated by a proper curative instruction. See Emery, 174 Wn. 2d at 761; Thorgerson, 172 Wn.2d at 455.

The relevant portion of the prosecutor's closing argument was as follows:

There are some universal truths that we all know. Our home should be a safe zone. It should be somewhere where we can keep our private things, where we can feel safe, where we can have an expectation of privacy. When we're home, when we're behind locked doors, we should feel that we're safe, that no one is going to come kicking in our door, that the police won't come kicking in our door. We all know that. When we're not home and we lock our doors when we leave, that somebody is not going to just come busting in and take our things. When we leave for vacation and we lock up before we leave, that our house is not just open for the taking because we're gone, because we didn't mow our lawn for a week while we were gone for a month. That doesn't mean it's an open invitation for anybody to just come and help themselves. Those are things that we all know.

When you think about how many things you leave behind when you leave in the morning to go to work, how many of your family heirlooms that you have tucked away somewhere in your home, maybe even in a place that normal people when they're

6

walking through your house wouldn't know. They wouldn't see them walking through your living room. You have them tucked away somewhere private.

Photo albums, Social Security numbers, bank statements, all of those private things that are tucked away in your house. They're in your home because you know that that's a safe place. That's your home. You don't get more private than that. You store them there because you assume that they're safe behind locked doors.

There are some basic concepts that we all know, that we teach our children. We talked about that on Monday, about accountability. Why do we teach our children to respect other people, to respect boundaries, not to hit other people, to bite other children, to respect not only their space, but their bodies? Those basic concepts we teach them at young ages for a reason because when you grow up we have those same basic concepts that we all expect other people to respect. And it comes down to accountability. And that's why we're here, is accountability.

The defendant admitted to what he did on March 7th. He admitted to being on the property. He admitted to kicking in the door to somebody else's house. He admitted to kicking in the door for the purpose of taking somebody else's property for his own use. But today we're here because he doesn't want to take accountability for that, and that's why we're here.

On appeal, for the first time, Hoeg asserts that these statements improperly invited the jury to decide the case on the basis of emotion rather than on the evidence.

A

Hoeg first contends that the prosecutor committed misconduct both by urging the jury to convict him in order to protect community values and by improperly referencing universal themes.[4] This contention is unavailing.

In delivering closing argument, a prosecutor "has wide latitude to argue reasonable inferences from the evidence." Thorgerson, 172 Wn.2d at 448 (citing

---

[4] Specifically, Hoeg contends that the prosecutor urged the jury to "act as the guardian of the community's moral code" by "casting jurors in the role of parents who must teach children the difference between right and wrong." Hoeg also assigns error to the prosecutor's statements to the jury regarding "universal truths" and the home as a "safe zone."

State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991)). However, it is a prosecutor's duty to seek a verdict based on reason. State v. Echevarria, 71 Wn. App. 595, 598, 860 P.2d 420 (1993). "A prosecutor may not properly invite the jury to decide any case based on emotional appeals." In re Det. of Gaff, 90 Wn. App. 834, 841, 954 P.2d 943 (1998).

Generally, a prosecutor may not urge jurors to convict a criminal defendant in order to "'protect community values, preserve civil order, or deter future lawbreaking.'" State v. Ramos, 164 Wn. App. 327, 338, 263 P.3d 1268 (2011) (internal quotation marks omitted) (quoting United States v. Solivan, 937 F.2d 1146, 1153 (6th Cir.1991)). However, "[a]rguments by the State asking the jury to act as 'a conscience of the community' are not improper unless intended to inflame the jury." State v. Davis, 141 Wn.2d 798, 873, 10 P.3d 977 (2000) (citing Finch, 137 Wn.2d at 842).

In this instance, the prosecutor's closing argument does not amount to a so-called "call to arms" that was intended to inflame the jury. The prosecutor did not urge the jury to ignore the evidence in this case or introduce new evidence in closing argument, nor did the prosecutor instruct the jury to uphold moral order by convicting Hoeg.[5] At no point did the prosecutor suggest that the jurors, acting on behalf of the community, had a civil duty to convict Hoeg. The prosecutor, in closing argument, simply developed the legitimate themes of privacy, security, and accountability.

---

[5] The prosecutor's reference to a parent-child relationship are more properly characterized as another reference to accountability, and will be analyzed as such.

8

As we cannot say that these statements were intended to inflame the jury's passion, the prosecutor's comments were not improper in this respect.[6] See Davis, 141 Wn.2d at 873; State v. McNallie, 64 Wn. App. 101, 111, 823 P.2d 1122 (1992), aff'd, 120 Wn.2d 925, 846 P.2d 1358 (1993) (reference to jury as representatives of the community not improper where there was no request that the jury "send a message," "protect the community," or "demonstrate community disapproval" and statements consistent with jury's duty to apply law to facts); cf. State v. Perez-Mejia, 134 Wn. App. 907, 916-20, 143 P.3d 838 (2006) (misconduct for prosecutor to urge jury to "send a message" that "we had enough. We will not tolerate it any longer," in addition to other objectionable remarks).

B

Hoeg next contends that the prosecutor's references to a parent-child relationship and accountability constituted prosecutorial misconduct that requires reversal. This is so, he asserts, because the prosecutor's statements invited the jury to decide the case on an emotional basis. We disagree.

The parent-child analogy and references to accountability are somewhat more problematic than references to "universal truths." As the State concedes, the prosecutor's allusion to the jury as a parent who should instill certain values in their children, in a different context, could constitute misconduct. However, we cannot say that, taken as a whole, the prosecutor's statements herein were so

---

[6] Moreover, these statements could have been ameliorated by a curative instruction. Because defense counsel failed to object at trial, the error is waived on appeal.

9

flagrant and ill-intentioned that enduring prejudice resulted or that no jury instruction could have cured any resulting prejudice.

Hoeg cites no Washington authority holding that statements by a prosecutor urging the jury to "hold the defendant accountable" are per se improper, flagrant, or ill-intentioned. However, cases in other jurisdictions are instructive. The Minnesota Supreme Court has addressed arguments that prosecutorial misconduct occurs when the State overtly asks the jury to hold the defendant accountable. See State v. Montjoy, 366 N.W.2d 103, 108-09 (Minn. 1985); State v. Ford, 539 N.W.2d 214, 228 (Minn. 1995). In Montjoy, a jury convicted the defendant of one count of aggravated robbery and two counts of kidnapping. 366 N.W.2d at 105. On appeal, the defendant argued that the prosecutor committed misconduct by emphasizing the "rule of accountability" throughout the State's closing argument. Montjoy, 366 N.W.2d at 108-09. During closing remarks, the prosecutor stated,

> [T]he whole trial boils down to one word. You know what that one word is? That's this: The word "Accountability." The word "Accountability." The rule that people who break the law have to be held accountable for their actions, because the minute they are not held accountable for the actions, is the same minute that the entire system of justice that brings us all together here in this courtroom becomes meaningless. And in line with that rule of accountability, ladies and gentlemen, the defendant in this case has had a lot of rights. . . . And in just a few minutes now, his attorney is going to stand up and I am not sure of the exact words, but I will guarantee you one thing, they are going to come out of his mouth saying one thing and that's this: "Let him go. Help the defendant avoid the consequences of his actions." And that's the very point, ladies and gentlemen, where that rule of accountability becomes very important.

Montjoy, 366 N.W.2d at 108-09 (emphasis added).

The Minnesota Supreme Court held that while the accountability theme arguably "crossed the line of propriety," the prosecutor did not commit misconduct. Montjoy, 366 N.W.2d at 109. The court noted that,

> It is proper for a prosecutor to talk about what the victim suffers and to talk about accountability, in order to help persuade the jury not to return a verdict based on sympathy for the defendant, but the prosecutor should not emphasize accountability to such an extent as to divert the jury's attention from its true role of deciding whether the state has met its burden of proving defendant guilty beyond a reasonable doubt.

Montjoy, 366 N.W.2d at 109. Moreover, the court took notice of the fact that the evidence of the defendant's guilt was very strong and "the trial court fully instructed the jury as to the state's burden of proof and the presumption of innocence." Montjoy, 366 N.W.2d at 109. Additionally, defense counsel did not object to the prosecutor's argument, which weighed heavily into the court's decision of whether to "reverse on the basis of prosecutorial misconduct in closing argument." Montjoy, 366 N.W.2d at 109.

The Montjoy court's ruling is compelling. Hoeg's theory of the case was that he lacked the requisite intent to commit a crime because he was planning to take only items that he believed were discarded. Thus, the defense posits, Hoeg did not intend to commit a crime upon entering the home. However, defense counsel took this argument one step further by interjecting appeals to sympathy throughout the trial. For example, in closing argument, defense counsel urged the jury to remember "the big picture": a 21-year-old, poor, homeless kid who kicked in the door to a home in search of clean clothes and blankets. Defense counsel continued this theme throughout his closing argument, contending that

11

Hoeg was looking for discarded property that would, presumably, be donated to charity anyway; Hoeg did not have the requisite intent to commit a crime. Ultimately, defense counsel concluded that "we're coming back to optimists vs. pessimists, giving a poor, homeless guy the benefit of the doubt as to his testimony. Police officers didn't do that. Their solution to his homelessness was to take him to jail."

Here, the prosecutor's closing argument and references to accountability were intended to "help persuade the jury not to return a verdict based on sympathy," as urged by defense counsel. Montjoy, 366 N.W.2d at 109. The prosecutor's statements were not an attempt to skew the State's burden of proof or inflame the jury but, rather, were designed to ensure a just verdict based on the evidence and to respond to Hoeg's testimony at trial and his counsel's argument in closing.

At trial, Hoeg testified that in the event that he was wrong about the house being abandoned, he did not want to be "held responsible for taking something that was worth value or anything. I was just going in to look for clothes. I am not a thief." The prosecutor's references to accountability flow naturally from this testimony. As in Montjoy, the prosecutor did not emphasize the theme of accountability in an attempt to "divert the jury's attention from its true role of whether the state has met its burden of proof." 366 N.W.2d at 109. Rather, the prosecutor highlighted the centrally contested issue in the case: whether the State had proved the elements of the crime beyond a reasonable doubt.

Furthermore, the evidence of Hoeg's guilt is strong. Hoeg testified at trial that he kicked in the door to Zenie's home with the intent of finding something inside to keep him warm. This testimony is consistent with Officer Wood's testimony that Hoeg admitted that he had kicked in the door to the home in search of directions, blankets, and clothes, and that when the alarm sounded he took off.

Additionally, the trial court instructed the jury not only as to the State's burden of proof and the defendant's presumption of innocence, but also that the prosecutor's arguments are to be disregarded if they are not supported by the law or the evidence.[7] These instructions ameliorate the concern that the jury was unfairly prejudiced by the prosecutor's closing argument. See State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001) (jury is presumed to follow the trial court's instructions) (citing Degroot v. Berkley Constr., Inc., 83 Wn. App. 125, 131, 920 P.2d 619 (1996)).

Moreover, defense counsel did not object to the challenged portions of the prosecutor's closing argument or move for a mistrial. This is significant in light of the fact that defense counsel objected to other portions of the State's closing argument and rebuttal. "The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did

---

[7] Jury Instruction 1 read:
The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

not appear critically prejudicial to an appellant in the context of the trial." State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990) (citing State v. Miller, 66 Wn.2d 535, 537, 403 P.2d 884 (1965); State v. Walton, 5 Wn. App. 150, 152, 486 P.2d 1118 (1971)). "If misconduct occurs, the trial court must be promptly asked to correct it. Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for new trial or on appeal." Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960) (citing Agranoff v. Morton, 54 Wn.2d 341, 340 P.2d 811 (1959)).

In light of the record as a whole, the references to universal truths and accountability were not so flagrant and ill-intentioned that enduring prejudice resulted. Consequently, defense counsel's failure to object at trial waived the claim of error. Stenson, 132 Wn.2d at 726-27.

Furthermore, even had there been no waiver, Hoeg has not demonstrated that he was unfairly prejudiced by the remarks. The evidence against Hoeg is strong. When Hoeg was arrested, he confessed to Officer Wood that he had kicked in the door of the home for the purpose of finding clean clothes and blankets, the alarm sounded, and then he took off. This is in line with Hoeg's testimony at trial. Hoeg testified to exactly what he told police officers on the night he was arrested; that he kicked in the door to the home, he was scared by the alarm, and left. Hoeg's testimony differed only in the respect that, at trial, he claimed that he attempted to enter the home because he was looking for discarded clothes and blankets. The question of intent was properly put to the

jury and there was ample evidence from which the jury could conclude that Hoeg had the requisite intent to commit the crime.

Hoeg's theory of the case, that he lacked the intent to commit a crime, *i.e.*, that he subjectively believed that the property was abandoned and, therefore, belonged to no one, was fully developed at trial.[8] The State presented testimony from Officer Wood regarding Hoeg's confession on the night of the crime, which was corroborated by evidence found by the backup officers. Hoeg, himself, testified at trial that he intended to break into the home to take blankets and clean clothing, but did so because he believed they were owned by no one. The question of whether the State sufficiently proved the necessary intent, or whether Hoeg's testimony as to his subjective intent was believable, were questions for the jury to decide. The prosecutor's closing argument was an attempt to dissuade the jury from deciding the case based on sympathy, as was advocated by defense counsel throughout the trial.[9] The prosecutor did not introduce new

---

[8] Abandonment is not a defense to a charge of residential burglary. State v. Olson, 182 Wn. App. 362, 376-78, 329 P.3d 121 (2014). The trial court correctly ruled that abandonment is not a defense to a charge of attempted residential burglary. The trial court admitted the evidence of "abandoned" property only on the question of Hoeg's intent.

[9] In opening statement, defense counsel painted the picture of a sympathetic defendant who was simply looking for a way to stay warm:

> That's the house that Zack came upon early in the morning of March 7, 2014. He's cold, he's homeless, he sees the house, and he can tell after walking around that it's unoccupied. No one is home and it's clear that no one is living there, has lived there any time recently. He does the math. The items inside that house, maybe there is a blanket, maybe some clean clothes that someone else is just going to throw away. No one wants that stuff. But I can use that stuff, and if they're just going to throw it away, then I could have it. And I'm cold and I'm homeless and clearly in my mind that stuff doesn't belong to anyone.
>
> He walks around and looks for a way in and he can't find a way in. He doesn't want to spend another night in the cold or in a park freezing. Maybe he could find a blanket that's been discarded that no one is using or no one is going to use in the future. A blanket that someone doesn't want. Then maybe he won't be cold that night.

15

evidence or misstate the law in closing argument, and the trial court instructed the jury to disregard the attorneys' remarks, as they are not evidence. Thus, Hoeg has not demonstrated that, absent the prosecutor's challenged statements, there was a substantial likelihood that the outcome of the trial would have been different.

Furthermore, Hoeg has not demonstrated that no curative instruction could have obviated any prejudicial effect on the jury. In fact, the trial court did give the jury a relevant instruction. The trial court instructed the jury that the prosecutor's remarks were not evidence and should not be considered as such. We presume that the jury follows the trial court's instructions. Stein, 144 Wn.2d at 247. Hoeg has not presented an argument to the contrary. Consequently, the trial court's instruction to consider the evidence presented, rather than the prosecutor's argument, ameliorated any potential prejudice caused by the prosecutor's remarks. To the extent that further instruction might have been of slight benefit to Hoeg, he did not so request. No entitlement to appellate relief has been shown.

III

Hoeg next contends that the prosecutor committed misconduct by improperly commenting on Hoeg's exercise of his right to a jury trial. This is so, he asserts, because the prosecutor's exhortation to "hold the defendant accountable" during closing argument caused the jury to draw an adverse inference from Hoeg's exercise of his constitutional right to a jury trial. We disagree.

16

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution provide a defendant in a criminal case with a right to a jury trial. U.S. CONST. amend VI; WASH. CONST. art. 1, § 22 (amend. 10). "To protect the integrity of constitutional rights, the courts have developed two related propositions. The State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right." State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984) (citing United States v. Jackson, 390 U.S. 570, 581, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968); State v. Frampton, 95 Wn.2d 469, 627 P.2d 922 (1981); Griffin v. California, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965)). Although Hoeg did not object at trial, a claim of manifest error affecting a constitutional right may be raised for the first time on appeal. State v. Romero, 113 Wn. App. 779, 786, 54 P.3d 1255 (2002) (citing State v. Curtis, 110 Wn. App. 6, 11, 37 P.3d 1274 (2002); State v. Nemitz, 105 Wn. App. 205, 214, 19 P.3d 480 (2001); State v. Rogers, 70 Wn. App. 626, 630, 855 P.2d 294 (1993); RAP 2.5(a)(3)).

As a threshold matter, Hoeg contends that the prosecutor's comments invited the jury to draw an adverse inference from Hoeg's exercise of his constitutional right to a jury trial. During closing argument, the prosecutor stated,

> The defendant admitted to what he did on March 7th. He admitted to being on the property. He admitted to kicking in the door to somebody else's house. He admitted to kicking in the door for the purpose of taking somebody else's property for his own use.

> But today we're here because he doesn't want to take accountability for that, and that's why we're here.[10]

In Hoeg's opinion, this statement amounted to the prosecutor arguing that "Hoeg, having confessed, should have pled guilty and spared everyone the inconvenience of a jury trial."

Again, Hoeg cites no Washington case that addresses prosecutorial comment on a defendant's exercise of his or her right to a jury trial. Instead, Hoeg primarily relies on State v. Killings, 340 P.3d 1186 (Kan. 2015), for the proposition that a prosecutor who urges the jury to "hold the defendant accountable" makes an improper comment on the defendant's exercise of his right to a jury trial. This reliance is misplaced.

In Killings, the defendant was charged and convicted of one count of premeditated first degree murder. 340 P.3d at 1195. During closing argument, the prosecutor argued to the jury, "*[w]e are here because the defendant was given an opportunity, he failed to accept responsibility for his homicidal act; and now that responsibility is passed along to you. Your responsibility now is to hold him accountable for something of which he would not accept responsibility for.*" Killings, 340 P.3d at 1200. Defense counsel objected to "any acceptance of responsibility" as improper argument but the trial court allowed the prosecutor to proceed. Killings, 340 P.3d at 1200.

On appeal, the court found that the prosecutor's statement was improper. Killings, 340 P.3d at 1201. This was so, the court stated, because,

---

[10] During the State's rebuttal argument, the prosecutor added, "I'm asking you to, when you do that, hold the defendant accountable. And the only way to do that at this point is we, the jury, find the defendant guilty as charged."

> [T]he statement here injected a matter outside the evidence presented at trial by asking the jury, "'Why are we here?'" *i.e.*, going through with a jury trial when the evidence of Killings' guilt was so overwhelming. The prosecutor then answered his own rhetorical question by suggesting that he and the jury were enduring the burden of a jury trial because Killings "'failed to take responsibility for his homicidal act.'" By making this argument, the prosecutor was clearly suggesting to the jury that Killings should have acceded to the State's evidence and waived his right to a jury trial because of the strength of the State's evidence against him. Accordingly, we find this statement outside the bounds of permissible argument.

Killings, 340 P.3d at 1201. Nevertheless, the court held that, under its constitutional harmless error analysis, there was "no reasonable possibility that the single improper comment in the prosecutor's closing argument affected the verdict." Killings, 340 P.3d at 1206. Specifically, the court held that the prosecutor's reference to the defendant's exercise of his right to a jury trial was not gross and flagrant, there was no evidence of ill will on the part of the prosecutor, and the State's evidence was so overwhelming that there was no "'reasonable possibility the error affected the verdict.'" Killings, 340 P.3d at 1205-06 (quoting State v. Inkelaar, 264 P.3d 81, 94 (Kan. 2011)).

Here, the prosecutor's statements did not amount to an improper comment on Hoeg's exercise of his right to a jury trial. Unlike the prosecutor in Killings, the prosecutor herein did not indicate that Hoeg failed to accept responsibility for his actions and that this responsibility was now passed on to the jury. Nor did the prosecutor suggest that the jury had to endure the burden of a trial because Hoeg refused to plead guilty. Rather, the prosecutor was reasonably responding to Hoeg's testimony at trial that he did not want to be "held responsible" for his actions. These comments, taken in the context of the

19

trial, are a reference to the central issue before the jury, the issue of Hoeg's intent to commit a crime. A prosecutor "has wide latitude to argue reasonable inferences from the evidence," Thorgerson, 172 Wn.2d at 448 (citing Hoffman, 116 Wn.2d at 94-95). Here, the prosecutor's challenged remarks did just that. Arguing that the jury should hold Hoeg accountable was a direct response to Hoeg's testimony at trial and Hoeg's theory of the case. In the context of the evidence and the defense theory, the prosecutor did not improperly comment on Hoeg's exercise of his constitutional right to a jury trial.

However, even had the prosecutor's comments been improper, any error was harmless. We apply the constitutional harmless error standard when a prosecutor's improper argument directly violates a constitutional right. State v. Espey, 184 Wn. App. 360, 369, 336 P.3d 1178 (2014). "A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." State v. Burke, 163 Wn.2d 204, 222, 181 P.3d 1 (2008) (citing State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996)).

As discussed, the evidence against Hoeg was overwhelming.[11] In fact, Hoeg confessed to Officer Wood and testified at trial that he kicked in the door to

---

[11] Hoeg argues that the State's evidence on the element of intent to commit a crime was lacking. We disagree. In a pretrial ruling, the court partially granted the State's motion in limine to preclude the defense from arguing that Hoeg believed the property was abandoned. In so ruling, the court stated,

> You cannot argue that this building was abandoned. It was not abandoned. Under our statute, this is an attempted burglary case. Abandonment is not a defense. You can argue to the jury what your defendant's intent was or was not. That's certainly an element of burglary. You can argue intent. But you can't argue that he believed this house was abandoned in any shape or form.

the house with the intent to take items inside. Once the alarm sounded, he left. Officer Wood likewise testified that, when detained, Hoeg stated that he had kicked in the door to the home, the alarm sounded, and he took off. Officer Wood additionally testified that Hoeg stated that he had broken into the home because he was looking for clean clothes and a blankets. These statements were corroborated by observations of backup officers, who confirmed the front door had been forced open and that there was a footprint on the door next to the doorknob.

Based on the overwhelming evidence, we are convinced that any reasonably jury would reach the same result absent the prosecutor's contention that "we're here because [Hoeg] doesn't want to take accountability." Accordingly, no entitlement to appellate relief has been shown.

IV

Hoeg next contends that his counsel's failure to object to the prosecutor's various challenged comments, or to request appropriate curative instructions, constituted ineffective assistance of counsel.[12] This is so, he asserts, because this failure to object was unreasonable under prevailing professional norms and resulted in prejudice to him.

---

Hoeg's appellate contention on the strength of the State's evidence conflates the permissible question (intent) with the impermissible one (abandonment). As set forth above, viewed properly, there was overwhelming evidence of Hoeg's criminal intent.

[12] "To establish ineffective assistance based on counsel's failure to request a jury instruction, the defendant must show that he was entitled to the instruction." Olson, 182 Wn. App. at 373 (citing State v. Cienfuegos, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001); State v. Johnston, 143 Wn. App. 1, 21, 177 P.3d 1127 (2007)). The jury was instructed to "disregard any remark, statement, or argument that is not supported by the evidence or the law in [the trial court's] instructions." Because the jury is presumed to follow the trial court's instructions, Hoeg has not demonstrated that he would be entitled to additional instructions on the various issues. See Stein, 144 Wn.2d at 247.

To establish an ineffective assistance of counsel claim, a defendant must demonstrate that "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))).

Generally, defense counsel's failure to object during the prosecutor's closing argument will "not constitute deficient performance because lawyers 'do not commonly object during closing argument absent egregious misstatements.'" In re Pers. Restraint of Cross, 180 Wn.2d 664, 721, 327 P.3d 660 (2014) (internal quotation marks omitted) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004)). However, "[i]f a prosecutor's remark is improper *and* prejudicial, failure to object may be deficient performance." Cross, 180 Wn.2d at 721 (emphasis added) (citing Gentry, 125 Wn.2d at 643-44).

Because we have concluded that the various challenged statements were either not improper or not prejudicial, Hoeg has failed to establish his ineffective assistance claim. See Thorgerson, 172 Wn.2d at 455; In re Pers. Restraint of Cross, 180 Wn.2d at 721.

Affirmed.

We concur:

_Duyer, J._

_Cox, J._

_Becker, J._